

**FILED & ENTERED**

**NOV 21 2019**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Cetulio    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SAN FERNANDO VALLEY DIVISION

In re:

Darin Davis,

Debtor.

Case No.: 1:10-bk-17214-VK

CHAPTER 7

**ORDER DENYING MOTION FOR STAY PENDING APPEAL**

[No Hearing Necessary]

On November 15, 2019, Asphalt Professionals, Inc. ("API") filed the *Emergency Motion for Stay Pending Appeal* (the "Motion") [doc. 387]. For the following reasons, the Court will deny the Motion.

## I. BACKGROUND

### A. *Debtor's Bankruptcy Case and the Original Objection to Claim*

On June 15, 2010, Darin Davis ("Debtor") filed a voluntary chapter 7 petition. David Seror was appointed the chapter 7 trustee (the "Trustee"). On January 12, 2011, API filed proof of claim no. 4-1, asserting an unsecured claim in the amount of $3 million. API's claim was based on claims pending before the state court (the "State Court Action"). During the pendency

of Debtor's bankruptcy case, the state court entered an award of damages in favor of API based on some of API's state court claims, which had been tried in two phases by the state court. However, the state court did not adjudicate API's fraud claims. Instead, the state court left trial of those claims to a future third phase.

On September 17, 2014, Debtor filed an objection to API's claim ("Debtor's Objection to Claim") [doc. 89]. [FN1]. On October 30, 2014, the Court held a hearing on Debtor's Objection to Claim. On November 20, 2014, the Court entered an order disallowing $1,869,048.05 of API's claim because that portion of the claim had already been paid (the "Claim Order") [doc. 101]. As to the remaining $1,130,951.42, the Court found that this amount "is allowed… *pending the outcome of [the fraud phase of the State Court Action]*, presently pending in the Superior Court of the State of California for the County of Ventura." (emphasis added). The Court did not decide whether API was entitled to the remaining $1,130,951.42. The Court refrained from deciding whether to disallow the remaining portion of API's claim until the State Court Action adjudicated API's fraud claim against Debtor.

### B. The Adversary Proceeding

On August 16, 2010, API filed a complaint against Debtor, objecting to Debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(2) and (a)(4) and requesting nondischargeability of any debt owed to it pursuant to 11 U.S.C. § 523(a)(2)(A). The Court bifurcated this proceeding, such that the Court first heard API's claims under 11 U.S.C. § 727. On December 23, 2014, the Court entered judgment in favor of Debtor on API's claims under 11 U.S.C. § 727 [Adversary Docket, doc. 113]. Given that API's claim under § 523(a)(2)(A) mirrored its claim of fraud in the State Court Action, the Court initially stayed this adversary proceeding to await conclusion of the State Court Action. On April 19, 2017, nearly seven years after Debtor filed his chapter 7 petition, API and Debtor appeared for a status conference in connection with the adversary proceeding. At that time, the Court informed the parties that it would no longer delay prosecution of the adversary proceeding until the State Court Action was resolved.

On April 23 and 24, 2018, the Court held trial on API's claim under § 523(a)(2)(A). On June 13, 2018, the Court issued a ruling after trial, holding that API did not meet its burden of

proof under § 523(a)(2)(A) [Adversary Docket, doc. 219]. On June 18, 2018, the Court entered judgment in favor of Debtor (the "Adversary Judgment") [Adversary Docket, doc. 221]. API filed an appeal with the Bankruptcy Appellate Panel of the Ninth Circuit (the "BAP"). On January 31, 2019, the BAP issued an opinion affirming this Court in full. *In re Davis*, 2019 WL 406680 (B.A.P. 9th Cir. Jan. 31, 2019). API did not appeal the BAP's decision.

On June 29, 2018, Debtor filed a motion requesting attorneys' fees and costs as the prevailing party under California law (the "Adversary Motion for Fees") [Adversary Docket, doc. 228]. API opposed the Adversary Motion for Fees [Adversary Docket, doc. 238]. The Court held several hearings on the Adversary Motion for Fees and issued multiple rulings, including a published opinion (collectively, the "Fee Decisions") [Adversary Docket, docs. 248, 254, 270]. For the reasons stated in the Fee Decisions, the Court held that Debtor was entitled to an award of attorneys' fees and costs.

On December 3, 2018, the Court entered an order granting in part and denying in part the Adversary Motion for Fees (the "Fees Order") [Adversary Docket, doc. 260]. Through the Fees Order, the Court awarded Debtor a total of $92,347.79 in attorneys' fees and costs. API appealed the Fees Order and, subsequently, requested a stay of the Fees Order pending appeal. On April 2, 2019, the BAP entered an order denying API's request for a stay pending appeal under Federal Rule of Bankruptcy Procedure ("FRBP") 8007, but granting a stay conditioned on API posting a $100,000 bond or payment of $100,000 into the Court's registry under Federal Rule of Civil Procedure 62(b) (the "First Stay Order") [BAP Docket, doc. 23]. On April 8, 2019, the Court entered an order approving the deposit of $100,000 into the Court's registry in accordance with the First Stay Order [doc. 275].

On July 3, 2019, the BAP issued an opinion affirming the Fees Order (the "BAP Fee Opinion") [Adversary Docket, doc. 288]. On July 16, 2019, API appealed the BAP Fee Opinion to the Ninth Circuit Court of Appeals [Adversary Docket, doc. 292]. API again requested a stay pending appeal of the BAP Fee Opinion. On August 7, 2019, the BAP entered an order denying the request under FRBP 8007, but granting a stay conditioned on API depositing an additional $100,000 with the Court (the "Second Stay Order") [BAP Docket, doc. 41]. In the Second Stay

Order, the BAP determined that the total of $200,000 would be sufficient security to stay the Fees Order. In a footnote, the BAP stated—

> This consists of the amount of the bankruptcy court's judgment ($92,347.79), the fees that [Debtor] claims he incurred in his successful defense of the appeal to [the BAP] ($37,614.75), an estimate of the fees [Debtor] might incur in defending the appeal in the Court of Appeals ($40,000), and an additional amount for interest.... It does not include the fees [Debtor] claims in defending a separate appeal or in objecting to API's proofs of claim; those matters are related to this appeal, but the relationship is not so close that the fees should be included in the calculation of security.

[BAP Docket, doc. 41, pp. 2-3 n.1]. On August 19, 2019, the Court entered an order approving the deposit of $100,000 into the Court's registry in accordance with the Second Stay Order [doc. 324]. The appeal before the Court of Appeals remains pending.

### C. The Trustee's Objection to Claim and Debtor's Joinder

On January 11, 2019, the Trustee filed an objection to API's claims (the "Trustee's Objection") [doc. 257], asserting that, in light of the Adversary Judgment in favor of Debtor, API no longer had a claim against Debtor's estate. Debtor filed a joinder to the Trustee's Objection [doc. 266]. The Court continued the initial hearing on the Trustee's Objection to allow API to file a supplemental brief and/or supplemental evidence regarding API's assertion that it still had a claim against the estate based on unpaid attorneys' fees and costs incurred prosecuting the second phase of the State Court Action.

In connection with the continued hearing, Debtor filed a reply, a declaration by Debtor's state court counsel and a request for judicial notice (the "Reply Documents") [docs. 277, 278, 279]. The Reply Documents included the Satisfaction of Judgment, which, among other reasons, persuaded the Court that API had been paid in full as to the first two phases of the State Court Action. As such, on May 9, 2019, the Court entered an order sustaining the Trustee's Objection and disallowing API's claim in full (the "Objection to Claim Order") [doc. 296]. API appealed the Objection to Claim Order.

On November 5, 2019, the BAP issued an opinion affirming the Objection to Claim Order (the "BAP Claims Objection Opinion") [doc. 378]. On November 12, 2019, API appealed the BAP Claims Objection Opinion to the Ninth Circuit Court of Appeals.

### D. Debtor's Request for Attorneys' Fees Incurred Objecting to API's Claims

On May 23, 2019, Debtor filed a motion requesting attorneys' fees and costs incurred objecting to API's proofs of claim (the "Claims Objection Fee Motion") [doc. 303]. API opposed the Claims Objection Fee Motion [doc. 362]. On October 17, 2019, the Court held a hearing on the Claims Objection Fee Motion. At that time, the Court issued a ruling granting the Claims Objection Fee Motion and awarding Debtor $29,421.50 in attorneys' fees and $76.58 in costs [doc. 369]. On October 28, 2019, the Court entered an order on the Claims Objection Fee Motion (the "Claims Objection Fees Order") [doc. 372].

### E. API's Appeals of this Court's Orders

On October 29, 2019, API appealed the Claims Objection Fees Order [doc. 373]. On November 6, 2019, API filed a request with the BAP for a stay of the Claims Objection Fees Order [BAP Docket, doc. 2]. On November 8, 2019, the BAP entered an order denying the request, without prejudice, and instructing API to file a request for a stay pending appeal with this Court [BAP Docket, doc. 4]. On November 15, 2019, API filed the Motion, requesting a stay of the Claims Objection Fees Order on the basis that Debtor has threatened to immediately execute on API's assets, including the $200,000 on deposit with the Court, and that Debtor will not be injured by a stay because the $200,000 sufficiently protects Debtor and API is worth more than the total amount of attorneys' fees and costs awarded to Debtor. Debtor opposes the Motion unless API deposits additional funds into the Court's registry [doc. 389].

## II.   DISCUSSION

Pursuant to FRBP 8007(a)(1)(A), "[o]rdinarily, a party must move first in the bankruptcy court for . . . a stay of judgment, order, or decree of the bankruptcy court pending appeal." "A court has considerable discretion when determining whether to issue a stay pending appeal." *In re GGW Brands, LLC*, 2013 WL 6906375, at *10 (Bankr. C.D. Cal Nov. 15, 2013) (citing *Nken v. Holder*, 556 U.S. 418, 433–34, 129 S.Ct. 1749, 1761, 173 L.Ed.2d 550 (2009)). "Although the decision whether to stay proceedings is dependent on the circumstances of the particular case, '[a] discretionary stay should be sparingly employed and reserved for the exceptional situation.'" *GGW Brands*, at *10 (quoting *In re O'Kelley*, 2010 WL 3984666, at *4 (D. Haw. 2010)).

The party requesting a stay bears the burden of "showing that the circumstances justify an exercise of that discretion." *Nken*, 556 U.S. at 433–34. A court considers four factors when determining whether to issue a stay pending appeal:

1. Whether the stay applicant has a made a strong showing that he is likely to succeed on the merits;
2. Whether the applicant will be irreparably harmed;
3. Whether the issuance of the stay will substantially injure the other parties interested in the proceeding; and
4. Where the public interest lies.

*Id*., at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724 (1987)). The four factors may be weighed on a sliding scale, "where a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

### A. Whether API is Likely to Succeed on the Merits

"While it is not necessary for [movant] to show that it is more likely than not that it will win on the merits, 'at a minimum' the petitioner must show that there is a 'substantial case for relief on the merits.'" *In re Blixseth*, 509 B.R. 701, 706 (Bankr. D. Mont. 2014) (quoting *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012)). "[I]t is not enough that the likelihood of success on the merits is 'better than negligible' or that there is a 'mere possibility of relief.'" *Lair*, 697 F.3d at 1204 (9th Cir. 2012) (quoting *Nken*, 556 U.S. at 434).

API has not met its burden of showing that it is likely to succeed on the merits of its appeal of the Claims Objection Fees Order. API briefly discusses this factor in the Motion by stating, in a conclusory fashion, that: (A) California's doctrine of merger prevents Debtor from collecting an award of attorneys' fees and costs; and (B) the Court incorrectly applied California law when it awarded Debtor his attorneys' fees and costs.

As to the former argument, API has not demonstrated that it is likely to prevail on its argument regarding the doctrine of merger because API did not raise this argument before this Court or the BAP. "[A]n issue will generally be deemed waived on appeal if the argument was

not raised sufficiently for the trial court to rule on it." *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 922 (9th Cir. 2010) (internal citations and quotations omitted).  API did not raise the doctrine of merger as an issue to be adjudicated by this Court.  In addition, the BAP's docket reflects that API did not raise its merger argument before the BAP.  Because API makes its merger argument for the first time before the Court of Appeals, API is not likely to prevail on this basis.

As to API's argument that the Court erred in its application of California law, the Court explained, in detail, the legal basis of its award of attorneys' fees and costs in the Fee Decisions.  The BAP affirmed the Court's Fee Decisions.  With the exception of raising the doctrine of merger for the first time, API has not met its burden of explaining why the Court of Appeals will disagree with the Court's and the BAP's analyses.

For the reasons discussed above and in the Court's Fee Decisions, API is not likely to succeed on the merits.  As such, this factor weighs against granting the Motion.

### B. Whether API Will Be Irreparably Harmed

As a threshold requirement, the movant must always show that irreparable harm is probable.  *Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011) (stating that it is a "bedrock requirement that stays must be denied to all petitioners who did not meet the applicable irreparable harm threshold, regardless of their showing on the other stay factors").  However, "even certainty of irreparable harm has never *entitled* one to a stay." *Id.* (emphasis in original).

API also has not demonstrated that it will be irreparably harmed.  In the Motion, API asserts it will be irreparably harmed because Debtor has threatened to execute on API's assets.  On the other hand, API also notes that Debtor will *not* be harmed by a stay because API "has been a successful and ongoing business for over 30 years and is worth far more than the attorney's fee awards involved." Declaration of Ray Bowen, ¶ 11.  Given that API is worth "far more" than all of the attorneys' fees and costs awarded to Debtor to date, API has not adequately explained why it will be *irreparably* harmed by Debtor attempting to satisfy the award from the Claims Objection Fees Order, which amounts to a total of $29,498.08 in attorneys' fees and

costs. In addition, nothing prevents API from posting an additional bond to acquire a stay pending the appeal of the Claims Objection Fees Order.

Moreover, API has not set forth any reason why it will be unable to receive a refund of the award if the Ninth Circuit Court of Appeals reverses the Court's and the BAP's decisions. Because API has not adequately explained that it will be unable to reacquire the funds and because API will not be rendered insolvent as a result of the Claims Objection Fees Order, API has not met its burden of showing *irreparable* injury.

### C. Whether the Stay Will Substantially Injure Other Parties

API also has not met its burden of proving that Debtor will not be substantially injured by a stay pending appeal. API contends that Debtor is protected by the $200,000 API deposited with the Court's registry. However, as noted by the BAP, the $200,000 deposit provides security for staying enforcement of the Fees Order and the fees incurred appealing the Fees Order. As explicitly pointed out by the BAP, the $200,000 does not protect Debtor as to the Claims Objection Fees Order or any other orders being appealed by API. Given that Debtor has incurred a substantial amount of attorneys' fees and costs, and enforcement of a significant amount of those fees and costs has been stayed by the $200,000 deposit, Debtor will be substantially injured by a further stay of enforcement because Debtor will continue to incur a considerable amount of attorneys' fees and costs defending the numerous appeals by API. Thus, this factor also weighs against granting the Motion.

### D. Where the Public Interest Lies

Here, public interest favors prompt enforcement of a court's orders. Public interest also favors ensuring compliance with those orders, including by taking measures to guarantee that an award of attorneys' fees and costs is paid. As such, using the BAP's stay orders as guidance, should API deposit an additional $60,000 into the Court's registry to secure the award from the Claims Objection Fees Order, the Court will grant API's request for a stay pending appeal. Without such security, the public interest as well as the remaining factors above mandate denial of this Motion.

///

### III.  CONCLUSION

Based on the foregoing, it is hereby

ORDERED, that the Motion is denied; and it is further

ORDERED, ORDERED, that if API deposits $60,000 into the Court's registry, the Court will stay the Claims Objection Fees Order.

###

Date: November 21, 2019

Victoria S. Kaufman
United States Bankruptcy Judge